FILED

2023 Feb-15  PM 12:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

AMY HARP ADAMS,                    )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )
                                   )   Case No.  4:21-cv-01300-SGC
COMMISSIONER, SOCIAL               )
SECURITY ADMINISTRATION,           )
                                   )
    Defendant.                     )

### MEMORANDUM OPINION[1]

The plaintiff, Amy Harp Adams, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB").  (Doc. 1).[2]  Adams timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3).  As explained below, the Commissioner's decision is due to be affirmed.

## I.      BACKGROUND FACTS AND PROCEDURAL HISTORY

Adams, who has a high school education and previously worked as an auto

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (R. __).

assembler, was 38 years old at the time of her alleged disability onset and 39 years old on her date last insured.  (R. 33, 355, 362).  She alleged disability due to asthma, breathing issues, degenerative disc disease ("DDD"), and depression.  (R. 360).

Prior to filing the application giving rise to the instant appeal, Adams had previously applied for DIB, alleging a disability onset of February 28, 2014.  (*See* R. 116-38).  The Commissioner denied the previous petition on December 19, 2018, and Adams appealed to a court sitting in this district; the court affirmed the Commissioner's decision.  (R. 159-79); *Harp v. Commissioner, Soc. Sec. Admin.*, No. 19-2064-AKK (N.D. Ala. *closed* Feb. 18, 2021).  Regarding the instant appeal, Adams reapplied for DIB on January 6, 2020, again alleging disability as of February 28, 2014.  (R. 140, 316-19).  After denial at the initial agency level, the ALJ held a hearing before issuing an unfavorable decision on March 8, 2021.  (R. 16-35, 53-80, 139-157).   After exhausting her administrative remedies, Adams filed this action, which is fully briefed and ripe for adjudication.  (Docs. 11-13).

## II.    LEGAL FRAMEWORK AND THE ALJ'S EVALUATION

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. §

404.1505(a).  A claimant must also show she was disabled between her alleged disability onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).  Here, Adams's date last insured was December 31, 2019.  (R. 355).  Additionally, while Adams alleged a disability onset of February 28, 2014, her previous claim was denied on December 19, 2018; any claim of disability prior to December 20, 2018, is barred by the doctrine of *res judicata*.[3]  *See* 20 C.F.R. §§ 404.987-404.989; *see, e.g., Cottrell v. Sullivan*, 987 F.2d 342, 344 (6th Cir. 1992).  Accordingly, the relevant inquiry here is whether Adams was disabled between December 20, 2018 and December 31, 2019.

The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. § 404.1520(a)(4).  First, the Commissioner must determine whether the claimant engaged in "substantial gainful activity."  *Id.* at § 404.1520(a)(4)(i).  If the claimant engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ found Adams did not engage in substantial gainful activity.  (R. 19).

---

[3] The ALJ incorrectly cited the previous unfavorable decision as issuing five days earlier.  (R. 17). This decision uses the correct alleged onset date of December 20, 2018.  Using either date, the analysis here is the same.

If the claimant did not engage in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1520(a)(4)(ii).   If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(ii) and (c).  At the second step, the ALJ determined Adams had the following severe impairments through her date last insured: obesity, asthma, and DDD status post-hemilaminectomy, status post anterior cervical discectomy and fusion.  (R. 19).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii).   If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Adams did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (R. 23).

If the claimant's impairment or combination of impairments does not meet or

equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. § 404.1520(e).  At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at § 404.1520(a)(4)(iv) and (e).  If the claimant is capable of performing past relevant work, the Commissioner will find the claimant is not disabled.  *Id.*

If the claimant is not capable of performing her past relevant work, the Commissioner will determine whether the claimant can perform other jobs that exist in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  *Id.* at § 404.1520(a)(4)(v) and (g)(1).  If the claimant can perform other work, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled.  *Id.* at § 404.1520(a)(4)(v) and (g)(1).

Before proceeding to the fourth step, the ALJ found Adams's impairments could reasonably be expected to cause her alleged symptoms but her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 26).  The ALJ determined, through the date last insured, Adams had the RFC to:

. . . perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; she should never climb ropes, ladders or scaffolds, she can occasionally reach overhead with her bilateral upper extremities; she can only occasional [sic] exposure to extremes of cold, extremes of heat and atmospheric conditions, i.e., dusts, odors, fumes and pulmonary irritants; she can have only occasional exposure to full body vibration; and she should have no exposure to hazards such as unprotected heights and dangerous machinery.

(R. 25). At the fourth step, the ALJ concluded Adams was unable to perform her past relevant work but could perform other jobs. (R. 32-34). Accordingly, the ALJ concluded Adams was not disabled during the relevant time. (R. 34-35).

## III.   STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is narrow. Its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient

6

reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## IV.   ANALYSIS

Adams's brief delineates four issues on appeal:

1.     The ALJ Failed to Accord Proper Weight to the Treating Physicians, Dr. Robinson and Failed to Show Good Cause Therefore in part because the Opinion Forms were **Prepared by Counsel**.

2.     The District Court in the prior claim did not determine if the medical opinions of treating physicians were properly disregarded. The Court held that **counsel abandoned** "any challenge to the factual accuracy of the ALJ' Conclusion".

3.     The ALJ erred in holding that Claimant's **Daily Activities** diminish the persuasiveness of her allegations.

4.     One Page Medical Opinions are valid and do not provide a Legitimate Basis for discounting expert Medical Opinions.

(Doc. 11 at 3) (capitalization, emphasis, and punctuation in original).  As articulated by the Commissioner, the plaintiff's arguments fall into two categories: (1) issues related to the opinions of James Robinson, M.D. (labeled by Adams as issues 1, 3, and 4); and (2) the court's finding in the prior appeal that Adams had abandoned certain arguments (Adams's issue 2).  (*See* Doc. 12 at 1-2).  These categories of arguments are addressed in turn.

### A.   <u>Dr. Robinson's Opinions</u>

Before addressing the specific arguments regarding the ALJ's evaluation of Dr. Robinson's opinions, the court must determine the proper legal framework to

apply: the treating physician rule or relatively new regulations promulgated to apply to claims filed after March 27, 2017.  Under the treating physician rule—originally developed by courts and later incorporated into the regulations—ALJs were required to afford more weight to the opinions of a claimant's treating physicians unless they could show good cause for affording less weight.  *See, e.g.*, *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  In 2017, the SSA eliminated the treating physician rule; the new regulation provides an ALJ owes no "defer[ence] . . . or any specific evidentiary weight, including controlling weight," to a treating physician's opinion.  20 C.F.R. § 404.1520c(a).  Instead, ALJs must weigh medical opinions based on their persuasiveness.  *Id.*

Adams asserts the court-made treating physician rule continues to apply, the new regulations notwithstanding.  (Doc. 11 at 25-26).  Meanwhile, the Commissioner contends the new regulations govern, and the treating physician rule has no application here.  (Doc. 12 at 7-14).  Since the briefing in this matter concluded, the Eleventh Circuit has definitively answered this quandary in the Commissioner's favor.  *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897-98 (11th Cir. 2022) (new regulations were a valid abrogation of the treating physician rule and apply to claims filed on or after March 27, 2017); *Glover v. Comm'r, Soc. Sec. Admin.*, No. 22-10497, 2022 WL 17826364, at *2–3 (11th Cir. Dec. 21, 2022).  Because Adams filed the instant claim on January 6, 2020, the new regulations

apply, and the treating physician rule is irrelevant.  To the extent Adams contends the ALJ should have applied the treating physician rule, this argument is devoid of merit.

Under the applicable regulations, an ALJ should evaluate the persuasiveness of an opinion by considering whether that opinion is consistent and supportable. 20 C.F.R. § 404.1520c(b)(2); *Harner*, 38 F.4th at 897.  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions will be."  20 C.F.R. § 404.1520c(c)(1).  And consistency with the entirety of the evidence—both medical and nonmedical—increases an opinion's persuasiveness. *Id.* at § (c)(2).   When considering the persuasiveness of a medical opinion, an ALJ may—but is not required to—explain how she considered other factors, such as the medical source's specialization and treating relationship.  *Id.* at § (b)(2).

Here, the arguments focus on two fill-in-the-blank forms Dr. Robinson completed on September 15, 2020: a "Physical Capacities Form" and a "Mental Health Source Statement" form.  (R. 1772-73).  Regarding her physical capacities, Dr. Robinson circled answers indicating Adams: (1) could sit upright in a chair and stand for less than 30 minutes at a time; (2) would, during an eight-hour day, spend four hours lying down; (3) would be off-task for half of an eight-hour day; and (4) in a thirty-day period, would miss twenty-five days of work.  (R. 1772).  Dr.

Robinson stated these limitations were caused by severe DDD, lumbar fractures, and moderately severe asthma.  (*Id.*).  On the Mental Health Source Statement, Dr. Robinson opined Adams could not adjust to routine and infrequent changes.  (R. 1773).  As with the Physical Capacities Form, Dr. Robinson opined Adams would be off-task for half of an eight-hour day and would miss twenty-five out of thirty workdays.  (*Id.*).  Both forms noted Adams's mediations caused drowsiness and fatigue.  (R. 1772-73).

As to Adams's mental health, the ALJ found Dr. Robinson's opinion was unsupported and inconsistent with the record.  (R. 30-31).  Regarding supportability, the ALJ cited the dearth of treatment records reflecting mental health complaints and/or treatment.  (R. 30).  Specifically, Dr. Robinson diagnosed Adams with anxiety and prescribed Celexa in September 2013.  (R. 1640; *see* R. 30).  Dr. Robinson's next mention of mental health issues appeared nearly two years later, when he prescribed Cymbalta to help with depression and fibromyalgia.  (R. 1633; *see* R. 30).  The ALJ further noted that, while Adams reported a history of anxiety, there was no further record of treatment for anxiety until February 2020, when she requested anxiety medication.  (R. 30; R. 890).  Not only was this after her date last insured, but the ALJ also reasonably inferred Adams was not taking anxiety medication during the time leading up to the request.  (R. 30).  Accordingly, the ALJ

concluded Dr. Robinson's opinion regarding the severity of Adams's mental impairments was not supported by the record.  (R. 30).

The ALJ also found Dr. Robinson's opinion regarding Adams's mental health was inconsistent with the medical record.  (R. 30-31).  In particular, the ALJ noted the lack of evidence that she was ever treated by a mental health professional.  (R. 31).  The ALJ also noted examination findings reflected that Adams was alert, oriented, not experiencing acute distress, had good insight and judgment, as well as normal memory, mood, and affect.  (*Id.*; *see* R. 751, 783, 839, 892, 894-95, 898, 1776, 1779, 1794).  Similarly, to the extent Dr. Robinson based his opinions on medication side effects, the ALJ noted treatment records did not reflect any complaints regarding side effects.  (R. 31; *see* R. 890-99, 1774-80).

As to physical abilities, the ALJ found Dr. Robinson's opinion was not supported by his treatment records.  In particular, the ALJ explained treatment notes revealed only one occasion—nine months after her date last insured—on which Adams had an irregular gait, as well as tenderness and a limited range of motion of the lumbar spine.  (R. 30-31).  However, the ALJ also noted Adams's other examinations revealed normal findings and no acute distress.  (*Id.*; *see* R. 892, 894-95, 898, 1776, 1779).  The ALJ also found Dr. Robinson's opinion of Adams's physical abilities—at least to the extent the opinion was based on asthma—was contradicted by the Adams's testimony of greater abilities, as well as largely normal

physical examination findings and diagnostic testing results.  (R. 31; *see* R. 749-51, 753, 755-57, 759-60, 826-44, 872-82, 916, 1776, 1779, 1794-95, 1802-04).

Finally, as to both physical and mental impairments, the ALJ found evidence regarding the plaintiff's activities contradicted Dr. Robinson's opinions. Specifically, the ALJ accurately cited Adams's testimony that she cared for her children with assistance, managed her personal care, prepared small meals, did laundry, and could ride in a car, shop in stores, and attend medical appointments. (R. 31; *see* R. 65-68).  The ALJ also noted the function report in which Adams stated she could manage personal care with some adjustments, take medications without reminders, prepare simple meals, do laundry and dishes, drive or ride in a car, manage finances, shop in stores for 3-4 hours each week, and follow instructions. (R. 31; *see* R. 379-86).

The ALJ properly considered Dr. Robinson's opinions under the applicable regulations.  20 C. F.R. §§ 404.1520c(a), (b)(2).  Substantial evidence supports the ALJ's conclusion that Dr. Robinson's opinions lacked support and were inconsistent with the record as a whole.  *See id.*  Turning to Adams's specific issues on appeal, the court discerns the following arguments regarding Dr. Robinson's opinions.  First, Adams asserts the ALJ improperly rejected the opinions because the forms on which they appeared were only one-page-long and were prepared by counsel.  (Doc. 11 at

3).  Next, Adams argues the ALJ erred in relying on her daily activities to discount Dr. Robinson's opinion.  (*Id.*).

Adams's arguments concerning the length and genesis of the opinion forms misstate the basis for the ALJ's reasoning.  The ALJ did note the forms were created by counsel; she went on to discuss shortcomings in the forms' designs.  (R. 30).  First, the ALJ accurately described the forms as largely consisting of circled responses concerning Adams's abilities, "with no real opportunity to provide explanation for the circled response."  (*Id.*).  Accordingly, the ALJ was correct in observing the limited probative value of the forms standing alone.  (*Id.*).  Stated slightly differently, the forms themselves provided little to no support for the opinions they bore.  The ALJ also accurately noted the forms presupposed that the claimant's ability to work would be limited.  (*Id.*).  However, the ALJ did not reject Dr. Robinson's opinions based on these shortcomings or because they were prepared by counsel.  Indeed, immediately after noting the forms' deficiencies, the ALJ stated: "More importantly, the responses provided by Dr. Robinson are not consistent with his medical treatment records."  (*Id.*).  The ALJ then discussed the various ways— discussed above—in which Dr. Robinson's opinions lacked support and were inconsistent with the record as a whole.  (R. 30-31).

Similarly, to the extent she argues the ALJ rejected Dr. Robinson's opinions because they appeared on one-page-long forms, Adams misstates the ALJ's

rationale.  As explained above, the ALJ found Dr. Robinson's opinions lacked support and were inconsistent with the record.  (R. 30-31).  Finally, to the extent Adams contends the ALJ erred in finding her self-reported daily activities contradicted Dr. Robinson's opinions, this evidence is probative of a claimant's abilities and is a permissible source of evidence under the regulations.  20 C.F.R. § 404.1520c(c)(2).

For the foregoing reasons, the ALJ applied the appropriate legal framework to Dr. Robinsons' opinions, and substantial evidence supports her conclusions.

### B.   <u>Arguments Regarding Prior Claim</u>

It's difficult to discern the precise contours of the remaining argument— delineated as issue 2 in Adams's briefing—but it relates to the prior appeal and the district court's affirmance there.  (Doc. 11 at 26-27).  Slightly more specifically, the argument concerns the court's finding in the prior appeal that counsel had abandoned arguments relating to opinions from four other treating physicians.  (*Id.*).  It appears Adams contends that, because the court in the prior appeal did not address the merits of these four opinions, *res judicata* and/or collateral estoppel does not bar their consideration by this court.  (*Id.*).

As an initial matter, Adams's nascent argument on this issue is only three sentences long.  More importantly, Adams does not describe any error associated with the Commissioner's treatment of the four medical opinions.  Accordingly,

Adams has abandoned any claims or arguments based thereon. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-83 (11th Cir. 2014). Additionally, even if Adams had developed these arguments, they are barred by *res judicata* to the extent they are based on the court's decision in her prior appeal. The time to challenge the prior court's decision was in that case, either via post-judgment motion or direct appeal.

## V.    CONCLUSION

Upon review of the administrative record and considering all of Adams's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 15th day of February, 2023.

Staci G. Cornelius

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE